the forfeiture of petitioner's bond herein was so disproportionate to the offense as to be shocking to one's sense of fairness such as would constitute an abuse of discretion by the State Liquor Authority. Although *Matter of Acosta v Ring* (37 AD2d 957) and *Matter of Student Prince v New York State Liq. Auth.* (28 AD2d 671) are both distinguishable from the case before us, we decline to follow their authority to the extent of any conflict with our present holding. Concur—Kupferman, J. P., Sullivan, Carro and Milonas, JJ.

■ In the Matter of JOSEPH GUASTAVINO, Doing Business as BOAT'S INN, Respondent, v STATE LIQUOR AUTHORITY et al., Appellants.—Order of the Supreme Court, Bronx County (Bertram Katz, J.), entered on September 25, 1987, which granted petitioner's application pursuant to CPLR article 78 to the extent of finding the determination of respondent State Liquor Authority directing the forfeiture of petitioner's $1,000 compliance bond to be excessive and vacating and annulling that portion of the penalty imposed, leaving the 10-day deferred license forfeiture as the sole penalty, is unanimously reversed on the law and the penalty imposed by respondent reinstated, without costs or disbursements.

Petitioner Joseph Guastavino was found guilty by respondent State Liquor Authority of having, on July 13, 1984, suffered or permitted gambling on his licensed premises in violation of subdivision (6) of section 106 of the Alcoholic Beverage Control Law. In that regard, one of respondent's investigators had discovered a Joker Poker machine operating in petitioner's establishment. The penalty imposed against petitioner was a 10-day deferred suspension of its license and forfeiture of its $1,000 compliance bond. The Supreme Court held that this penalty is excessive to the extent that it requires the bond forfeiture. We disagree for the reasons stated in this court's opinion in *Matter of Norwood Pub v State Liq. Auth.* (145 AD2d 322 [decided herewith]). Concur—Kupferman, J. P., Ross, Carro, Rosenberger and Ellerin, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EFRAIN ROMAN, Also Known as EFRAIM ROMAN, Appellant.—Judgment, Supreme Court, Bronx County (Joseph A. Cerbone, J.), rendered July 9, 1987, convicting defendant, upon a plea of guilty, of criminal possession of stolen property, second degree, and sentencing him to a term of imprisonment of one year, unanimously reversed on the law, the motion to suppress granted, the judgment vacated and the indictment dismissed.

This appeal raises the question of whether evidence at a hearing to suppress stolen property established the existence of probable cause for the arrest of the defendant and the admissibility of such stolen property concomitantly seized.

Defendant, Efrain Roman, and his brother, codefendant Ruben Roman,* were indicted by a Bronx County Grand Jury in October of 1986 for criminal possession of stolen property, first degree. The indictment charged the defendant with "acting in concert" with codefendant Ruben.

Prior to trial the defendant moved to suppress the physical evidence and the codefendant moved to suppress both the physical evidence and statements made by him. At a joint hearing held on May 5, 1987, Officer Michael Murphy of the New York City Housing Police, called by the People, was the only witness.

Murphy testified that while in uniform on routine foot patrol on September 13, 1986, at about 1:00 P.M., he observed defendant Efrain and codefendant Ruben, who was previously known to him, sitting on a bench on the grounds of the Millbrook Housing Project. On the bench and ground between them were three shopping bags and a box. As he observed the two men, he noticed a third man exit a nearby building, approach codefendant Ruben, and examine the packages. The third man then removed a quantity of money from his pocket and counted out bills. As the officer came within 15 yards of the men, the third man returned the money to his pocket and left the area. The officer approached the defendant and codefendant, noticed a VCR protruding from a shopping bag and inquired as to who owned it. The codefendant responded that the VCR belonged to him, that he had just picked it up from a repair shop and that he had paid $25 for its repair. The codefendant also indicated that he was living at a nearby men's shelter. The defendant volunteered, in the midst of the codefendant's conversation with the police officer, that he did not know to whom the VCR belonged.

Officer Murphy further testified that since he knew that the shelter did not allow residents to keep such personal property, "I then, called for a radio car and I took them in for investigation." A patrol car arrived, and the two men and property were taken to the precinct station for investigation. Police

---

* The codefendant was convicted of criminal possession of stolen property, second degree, upon a plea of guilty, and sentenced to a term of imprisonment of one year. No appeal from his conviction has been taken.

Officer Murphy testified that the two men were not handcuffed and came willingly.

At the precinct, the packages were found to contain jewelry, two cameras and underwater camera equipment. All the items were quickly traced to a Manhattan burglary which had occurred the previous night. At this point the defendant and codefendant were formally arrested by Officer Murphy and charged with possession of stolen property.

Based upon this testimony the hearing court, in a decision dated May 20, 1987, concluded, as a matter of law, that "Officer Murphy's initial approach and inquiry was clearly reasonable, predicated as it was upon specific articulable facts"; that when the police officer radioed for a backup and the defendant and codefendant were placed in a patrol car, they had effectively been placed under arrest; and that the arrest of both men was based upon probable cause because it was more likely than not that "the two individuals on the bench were not the true owners of the property in question, as at least one of them claimed to be, but instead were dealing in stolen merchandise."

The hearing testimony supports the hearing court's finding of an articulable reason sufficient to justify Officer Murphy approaching the two men. Likewise the facts indicate the existence of a reasonable or founded suspicion that criminal activity was afoot, necessary to allow Police Officer Murphy's further but limited questioning. (CPL 140.50 [1]; *People v De Bour,* 40 NY2d 210, 215-216, 223, 225 [1976]; *People v Torres,* 115 AD2d 93, 96 [1st Dept 1986].) However, the facts fail to support the hearing court's conclusion that the arrest of defendant Efrain, effectively made at the time the defendant and codefendant were taken to the station, was based upon probable cause. The court based its conclusion entirely upon the behavior of codefendant Ruben and applied its findings equally to the defendant. Even after the police discovered at the police station that the items were the fruits of a burglary, evidence that the property was possessed by the defendant was still lacking. Concur—Carro, J. P., Milonas, Kassal and Smith, JJ.