OPINION OF THE COURT
Wachtler, J.
The defendant was charged with criminal possession of a weapon in the third degree, a felony (Penal Law, § 265.02) and criminal possession of a controlled substance in the seventh degree,* a misdemeanor (Penal Law, § 220.03). Claiming a violation of his constitutional rights the defendant sought to suppress evidence, a pistol and numerous packets of heroin. After a hearing Special Term denied the motion. The defendant subsequently pleaded guilty to the drug charge, and a jury convicted him of the weapon offense. The Appellate Division affirmed.
On the evening of August 25, 1975 John Capers and Harold Johnson, New York City detectives, were investigating a homicide which had occurred about one month earlier. The two plainclothes detectives, in an unmarked radio patrol car, met an informant at Eighth Avenue and 127th Street in Manhattan near the location of the crime under investigation. The informant told them that a man called "Heavy” wearing a gray jacket might have information concerning the homicide. Detective Capers then saw a man, whom he believed to be "Heavy”, standing and talking with another man. "Heavy”, the defendant in this case, did nothing to arouse even the *401 slightest suspicion. As the police car approached, the defendant began walking south on Eighth Avenue. Capers stopped the car beside defendant on 125th Street and said to him, "Please step over to the car.” The detective then said that he wanted to speak to the defendant about the homicide and asked him to get into the rear seat of the car. It is not clear whether the officers identified themselves as such at this time. After the defendant complied, Capers began to drive away slowly. At that point Capers asked the defendant if he was "clean”; the defendant answered yes. Capers then warned the defendant: "Just keep your hands where I can see them.” When the car had reached the middle of the block between 124th and 125th Street, Capers, looking into the rear view mirror, saw the defendant reach down with his left hand. Braking the car, Capers turned his head and saw the defendant throw a black object out of the window, which Johnson, the other detective, immediately recognized as a gun. As soon as the vehicle came to a full stop Johnson retrieved the object, a loaded .32 caliber automatic revolver. The defendant was taken to the station house where a search revealed 13 glassine envelopes later found to contain heroin. The principle issue is whether the defendant produced the weapon as a direct result of illegal police action.
Initially, we note our agreement with the Appellate Division that the defendant was seized within the meaning of the State and Federal Constitutions (US Const, 4th Arndt; NY State Const, art I, § 12). While the defendant’s entering the police car may not have been coerced, the command to keep his hands exposed demonstrates that his freedom of movement was significantly restrained. In addition, when Capers without explanation began driving the car, he substantially infringed on the defendant’s liberty. "Whenever an individual is physically or constructively detained by virtue of a significant interruption of his liberty of movement as a result of police action, that individual has been seized within the meaning of the Fourth Amendment” (People v Cantor, 36 NY2d 106, 111; People v Jennings, 45 NY2d 998; Terry v Ohio, 392 US 1, 16). Since prior to the seizure of the defendant the police wholly lacked evidence of probable cause linking him to criminal activity, the seizure was clearly unlawful.
We next consider whether the unlawful seizure tainted the discovery of the weapon. The defendant argues that the gun was "fruit of the poisonous tree”, discovered as a direct result *402 of the unlawful seizure. If this premise is correct then the gun was illegally seized and should have been suppressed. Furthermore, as illegally seized evidence, the gun could not have provided the predicate for the subsequent search at the station house which revealed packets of heroin. Hence, following this line of reasoning, the heroin should have been suppressed as well. .
The People contend that the defendant’s act of throwing the revolver from the car was unanticipated and unprovoked. According to the People, since the act was independent of the unlawful police conduct, the taint of the illegal detention was sufficiently dissipated to render the seizure of the gun constitutionally permissible. If this premise is accepted, then the subsequent arrest and search, revealing the heroin, were likewise valid. We hold that on this record the defendant’s act of throwing the revolver was not in direct and immediate response to the illegal detention, and that the revolver, disclosed as a result of defendant’s independent act, was not tainted by the prior illegality.
In reaching this determination, we first observe that here the weapon was produced and thrown to the street by the defendant himself. This factual context distinguishes the present case from those where a defendant takes no active role in revealing the seized evidence (People v Allende, 39 NY2d 474; People v Pepitone, 48 AD2d 135, affd 39 NY2d 907).
But the inquiry does not end there. As we have often said, if the evidence was revealed as a direct consequence of the unlawful police action, the evidence is tainted and must be suppressed on defendant’s motion (see, e.g., People v Butterly, 25 NY2d 159; Rios v United States, 364 US 253). This principle was followed in People v Baldwin (25 NY2d 66). There the defendant, when illegally arrested on a burglary charge, took a white envelope from his pocket and dropped it to the ground. The arresting officer seized the envelope in which two pills, containing a narcotic, were found. Arguing abandonment of the evidence, and the existence of probable cause to arrest, the People did not contend that the taint of the illegal arrest had been dissipated. We held in Baldwin, characterized by the defendant as a "dropsy” case, that the drugs should have been suppressed.
Similarly in People v Loria (10 NY2d 368) two police detectives and two Federal narcotics agents told the defendant and his sister that they would like to talk to them inside the *403 sister’s apartment. One of them knocked on the front door. A moment later two slats of the Venetian blind covering the glass door parted and someone peered through; hasty footsteps were heard within the apartment. The police then threatened to kick the door down, and in response the defendant’s sister unlocked the door. Rushing in, the police saw the defendant’s brother-in-law pick up a green leather vanity case and drop it out the window. The vánity case was seized and found to contain three pounds of heroin. As in Baldwin the attempt to discard the evidence was a direct result of the precipitous and unlawful police action. Since the production of the evidence was a spontaneous, provoked reaction to the illegality, the evidence was tainted.
Our most recent case applying this principle is People v Cantor (36 NY2d 106, supra). In Cantor, after the defendant had parked his car in front of his house, a policeman in plainclothes, driving a private car, blocked the defendant’s car preventing forward movement. When the defendant exited his car, he saw three men in street clothes approaching him. Although police officers, they had not identified themselves as such. In response the defendant drew a gun to defend himself. As soon as one of the officers displayed his badge, the defendant returned the pistol to his back pocket, offering no further resistance. In Cantor we found that the police had seized the defendant, and that the seizure, unsupported by probable cause, was illegal. Holding that the pistol should have been suppressed, we stated: "The pistol was revealed as a direct consequence of the illegal nature of the stop” (People v Cantor, supra, at p 114). Not only did the defendant draw the gun as a direct result of the illegality, but the police, by confronting him in a threatening manner without identifying themselves, actively provoked his reaction of self-defense.
There are other cases, however, where after being unlawfully seized a defendant has, independent of the illegality, revealed evidence subsequently seized. In such cases any "connection between the lawless conduct of the police and the discovery of the challenged evidence * * * [is] 'so attenuated as to dissipate the taint’ ” (Wong Sun v United States, 371 US 471, 487, quoting Nardone v United States, 308 US 338, 341). So it was in People v Townes (41 NY2d 97) where the defendant, after having been illegally seized, drew, and attempted to fire, a pistol at a plainclothesman who had identified himself as a police officer. We held "that Townes’ free and *404 independent action in pulling and attempting to fire the gun, taken after and in spite of, or perhaps because of, the plainclothesman’s identification of himself as a police officer”, dissipated the taint of the lawless police conduct (People v Townes, supra, at p 102; see People v Martinez, 37 NY2d 662).
Turning to the case before us, we conclude that defendant, in seeking to rid himself of the weapon, did not respond directly to the illegal police action. The encounter with the police began on the street, and continued when the defendant entered the police car which Detective Capers began to drive away. Rather than a spontaneous reaction to a sudden and unexpected confrontation with the police, the defendant’s attempt to discard the revolver was an independent act involving a calculated risk.
The distinction between a spontaneous as opposed to a calculated act is not foreign to our law (People v Edwards, 47 NY2d 493). This very consideration has been critical in deciding the admissibility of hearsay declarations (People v O’Neall, 47 NY2d 952; People v Caviness, 38 NY2d 227; People v Marks, 6 NY2d 67). In People v Gilbert (199 NY 10, 24) we said: "While the time for reflection is not measured in minutes or seconds it is measured by facts. The time must be long enough to make a choice, as the result of thought and reflection, and to act upon the choice thus made.” Depending on the circumstances, only a brief period of time will render a declaration unspontaneous (Handel v New York R. T. Corp., 252 App Div 142, affd 277 NY 548; People v Hall, 260 App Div 421). Applying like reasoning, we conclude that although the time was brief, the defendant had had time enough to reflect and formulate a strategy for ridding himself of the incriminating evidence.
It is most important also that the police illegality lacked the "quality of purposefulness” to uncover incriminating evidence (Brown v Illinois, 422 US 590, 605). In the present case the police had no knowledge that the defendant was carrying a weapon. Indeed, had they suspected that he had a loaded pistol they surely would have searched him immediately. Not designed to uncover the weapon or any other evidence, the illegal police action lacked the element of purposeful exploitation which would taint the discovery of the weapon.
One of the main purposes of the exclusionary rule is to deter lawless police activity (People v McGrath, 46 NY2d 12, 31; Mapp v Ohio, 367 US 643, 648). In a case such as this *405 where the police conduct, although illegal, neither provoked the defendant into revealing the evidence seized nor was designed to lead to the discovery of any evidence, the purpose of the exclusionary rule would not be served by granting the motion to suppress (see Brown v Illinois, 422 US 590, 605, supra).
Accordingly, the order of the Appellate Division should be affirmed.

 By amendment this offense is now denominated "Criminal possession of a controlled substance in the eighth degree” (L 1978, ch 772, § 4, eff Sept. 1, 1978).