■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT GREEN, Also Known as ROBERT DUMAS, Respondent. — Appeal by the People from an order of the Supreme Court, Kings County, dated April 9, 1980, which, after a hearing, granted the defendant's motion to suppress physical evi-

---

dence and statements. Order reversed, on the law and the facts, motion denied, and matter remitted to Criminal Term for further proceedings on the indictment. On this motion to suppress, the defendant bore the ultimate burden of proving that the evidence in question should not be used against him because it was obtained as the result of an illegal search and seizure. However, the People had the burden of going forward to show the legality of the police conduct in the first instance. (See *People v Berrios,* 28 NY2d 361, 367-368.) The sole witness at the suppression hearing was Louis Barba, the arresting police officer. He testified that he and his partner had been directed to be on the lookout for a certain individual wanted in connection with two homicides and who was known to frequent 1614 Broadway in Brooklyn, a location in their patrol area. The officer and his partner had been to that location on two or three occasions looking for the fugitive. At about 7:05 P.M. on January 8, 1979, Officer Barba and his partner again went to 1614 Broadway where they were met by two additional officers. The property was improved with a building which had once been a bank. According to Officer Barba, the building appeared to be abandoned. It was known as a location where persons engaged in gambling and trafficked in narcotics. The officer characterized it as an "open club". Anyone could simply walk in off the street and he had observed people going into and coming out of the building. The front door was open and no one was standing nearby. The officers, who were in uniform, just pushed the door and walked in. They passed through a large vacant room and went to a back room which opened on the main room through an open portal without doors. Inside the back room a group of people were standing around a pool table at which they were playing craps. As he walked toward the pool table, Officer Barba saw defendant and another man seated at a smaller table playing cards. He observed defendant reach into his right hand coat pocket, from which defendant took something "shiny", placed it between his legs and let it drop to the floor. The officer covered defendant with his service revolver while his partner retrieved a .32 caliber pistol from the floor between defendant's feet. Defendant was arrested and taken to a patrol car in front of the building where he was read his *Miranda* rights. Defendant said that he understood those rights. The officer asked what he was doing in the "club" and defendant stated that he was working there as a "bouncer" and had bought the gun for $50. Defendant then said that he had never been arrested and asked "How hard would this go against me?" The court at Criminal Term discredited the police officer's testimony and found the premises in question were used as a private club at which defendant had a legitimate expectation of privacy. On the contrary, we find that the police officer's testimony was credible. It met the People's burden of going forward in the first instance with proof to establish that no illegality tainted the search by tending to show that the building had been abandoned by its owner, that it was used by neighborhood persons as a place for gathering and gambling, and that it was open to any member of the public who chose to enter. The door was open, unattended and unlocked and people could come and go as they pleased. Although Criminal Term found that there was a "possibility" that the building was occupied as a club with the knowledge and consent of its owner "pursuant to [a] lease arrangement," the absence of any such proof renders its finding in that regard a mere supposition favoring the defendant. In short the People met their burden but defendant failed to meet his by proving that the premises in question constituted a private rather than a public place. Police Officer Barba thus had as much right to be present therein as any other person. He observed the defendant suspiciously drop a

shiny object to the floor. Investigation showed that that object was a gun. That being so, he had probable cause to arrest defendant, and the gun and the statements defendant made after knowingly waiving his *Miranda* rights are not subject to suppression. Even if we were to assume that the entry of the police upon the premises was unlawful, we would hold that defendant's act in dropping the gun was not a direct response to illegal police conduct but was an independent act calculated to rid himself of incriminating evidence. Since the police were present only to locate a homicide suspect and their actions were not designed to uncover the weapon or any other evidence, such assumed illegal entry on their part lacked the element of purposeful exploitation which would taint the discovery of the weapon. (See *People v Boodle,* 47 NY2d 398, 404-405.) Damiani, J.P., Gibbons, Margett and O'Connor, JJ., concur.