THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RAYMOND TORRES, Appellant.

First Department, March 13, 1986

### APPEARANCES OF COUNSEL

*Stephanie T. Knowles* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Roger L. Stavis* of counsel *(Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

CARRO, J. P.

*People v Howard* (50 NY2d 583, 586) established the following principles of law: "An individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. His refusal to answer is not a crime. Though the police officer may endeavor to complete the interrogation, he may not pursue, absent probable cause to believe that the individual has committed, is committing, or is about to commit a crime, seize or search the individual or his possessions, even though he ran away. Nor when the individual, cornered by his pursuers in the basement of a building and while looking for a way out of the basement, drops or throws a package he was carrying into a pile of junk, has he been shown to have intentionally abandoned the package so as to make a warrantless search and seizure permissible." These statements are directly on point with the facts herein.

On April 24, 1984, at 5:15 P.M., uniformed Police Officer Gary Kurtz and his partner responded as a backup unit to a radio run at 1171 Elder Avenue in The Bronx, a "known drug location". Also responding as another backup unit were Officers Rodriguez and Kelleher. The radio run contained information from an anonymous source that a tall skinny male Hispanic and blonde female Hispanic were selling drugs and

that there were possibly "three lookouts with weapons * * * possibly guns."

When Officer Kurtz arrived at the location, he saw a crowd of people in front of the building. Kurtz approached defendant, who was talking to some children, to ask what was going on. His only reason for approaching defendant was that defendant was closest to Kurtz' radio patrol car. It is undisputed that defendant did not match the description given in the radio run of the male Hispanic. As Kurtz neared him, defendant turned away. Kurtz then reached out to grab defendant and touched his shoulder. Defendant twice told Kurtz not to touch him and walked briskly away. Officer Rodriguez noticed defendant trying to pull away from Officer Kurtz and saw Officer Kurtz "trying to stop him, frisk, something like that. He was trying to hold him." Officer Rodriguez then stopped defendant, grabbed him by the arm, told him to relax and stay still and ordered him to speak with Kurtz. At this point, Rodriguez determined that defendant was no longer free to leave.

Defendant, still unwilling to talk to the officers, pulled away from Rodriguez and ran into an alley. Rodriguez pursued him, followed by Officers Kurtz and Kelleher. During the brief chase, Rodriguez saw defendant pull something out of his waistband. When defendant, blocked by a fence, could run no further, he threw an object over the fence which Rodriguez believed to be a silver revolver. Defendant was then seized and searched. Thirty minutes later, a silver gun was recovered from the yard behind the fence. The motion to suppress the gun was denied after a hearing. After a jury trial, defendant was found guilty of criminal possession of a weapon in the third degree and sentenced as a second felony offender to an indeterminate term of imprisonment of from 3½ to 7 years. Based on *People v Howard (supra)*, we have determined that a reversal of this conviction, suppression of the weapon and dismissal of the indictment are warranted.

Resolution of the suppression issue involves basically two inquiries: whether the police action was illegal, requiring that the gun, which was seized as a direct result of that action, be suppressed as the fruit of the poisonous tree, and whether despite the illegal conduct defendant waived his constitutional right to challenge it by his act of discarding the gun in a manner indicative of an intentional abandonment. We would answer the first question in the affirmative and the second in the negative.

Determining the reasonableness of police conduct pursuant to a street encounter requires "a weighing of the government's interest against the encroachment involved with respect to an individual's right to privacy and personal security". *(People v De Bour,* 40 NY2d 210, 215.) This weighing process involves a consideration of "whether or not the police action was justified in its inception and secondly whether or not that action was reasonably related in scope to the circumstances which rendered its initiation permissible" *(supra,* p 215). The *De Bour* court recognized the existence of four different levels of police intrusiveness, each of which is justified by a certain quantum of attendant circumstances: "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality *(People v De Bour, supra).* The next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure * * * Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1 * * *). A corollary of the statutory right to temporarily detain for questioning is the authority to frisk if the officer reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3). Finally a police officer may arrest and take into custody a person when he has probable cause to believe that person has committed a crime, or offense in his presence (CPL 140.10)" *(supra,* p 223).

The facts at bar necessitate application of these above-mentioned principles. Upon responding to the location of the possible narcotics activity and seeing defendant standing near where Kurtz had parked his patrol car, it was permissible for Officer Kurtz to approach defendant to see if he could shed light on the radio run. It was equally permissible for defendant, who admittedly was not the person described in the radio run, to exercise his constitutional right to walk away and remain silent.

Once defendant made it clear that he did not want to be involved, there was no justification for Kurtz' further intrusive action of trying to grab defendant's shoulder. Even if that

were justified, defendant's subsequent demand to be left alone and his brisk departure failed to create even a founded suspicion of criminality, much less probable cause, sufficient to justify the subsequent action of Officer Rodriguez in forcibly seizing defendant by grabbing him and ordering him to stop and answer questions, conduct which undeniably involved a significant interruption with defendant's liberty of movement. *(See, People v De Bour, supra,* at p 216.) Even Officer Rodriguez equated his own behavior with a seizure by testifying that at that point defendant was no longer free to leave. This seizure was unlawful as there was absolutely no basis for connecting defendant to the radio run or to any other suspected crime. Defendant did not match the anonymously given description of the tall skinny Hispanic who was possibly selling drugs. The reference to lookouts, who were "possibly" armed with guns, contained absolutely no description with which to compare defendant. Also important is the fact that defendant was but one person among a crowd of people near the location mentioned in the radio run, making it even more difficult to link him specifically to the report of the possible criminal activity.

Nor had the officers observed defendant acting in any manner which would indicate criminal activity was afoot. All defendant was seen doing was talking to a group of children, certainly unsuspicious and at worst innocuous behavior. There was no observation of a bulge on his person such as would indicate a weapon or drugs. Neither had defendant up to this point made any motions towards his waistline or pocket suggesting that he might be armed and might use a weapon. Nor were the police familiar with this defendant from past encounters. Defendant had only exercised his right not to answer questions and to walk away, conduct certainly conducive to the innocent interpretation that he did not want to be involved in a possibly volatile and dangerous situation due to the sudden appearance of a number of radio patrol cars at a location crowded with people. These facts did not justify Officer Rodriguez' attempt to forcibly seize defendant.

Nor when defendant managed to break away from Officer Rodriguez' hold and run away did this provide the officers with the probable cause needed under *People v Howard* (50 NY2d 583, *supra)* to pursue defendant, since there was still no escalation of any objective facts known to the police to connect defendant to any crime. Flight can be a factor determinative of the existence of probable cause, but only when it is accom-

panied by additional indicia of criminality pointing to the defendant as having committed a crime. *(People v Howard, supra,* at p 592.)

In this case, what the police knew remained constant throughout this encounter: that there had been a general, anonymous tip of possible narcotics activity and guns at this location, which was not linked in any way to defendant and which had not even been confirmed. Standing alone, this information would only permit the common-law right of inquiry of a person matching the description, which description defendant did not match. *(See, People v Benjamin,* 51 NY2d 267, 270; *People v Bruce,* 78 AD2d 169, 172.)* Defendant's mere presence at the scene of a possible crime, especially when he was part of a crowd of people present, did not provide any additional indicia of criminality to support probable cause. *(See, Ybarra v Illinois,* 444 US 85, 91; *People v Howard, supra,* at p 586.)* As noted before, defendant's desire not to answer questions and his act of running away were as easily explained by an understandable desire to avoid a potentially dangerous situation as by a culpable intent to hide something. Behavior susceptible of an innocent as well as culpable interpretation will not suffice to establish probable cause. *(People v Carrasquillo,* 54 NY2d 248, 254; *People v De Bour, supra,* at p 216.)

The only escalation was in the adamance with which defendant endeavored to exercise his constitutional rights to remain silent and walk away freely from a nonconsensual situation which was increasingly becoming illegally coercive. Without additional indicia of criminality, his flight simply did not justify the pursuit. Because probable cause to pursue defendant was lacking, and the gun was seized as a direct result of that pursuit, it is clear that the gun must be suppressed as the fruit of the poisonous tree unless it can be found that defendant waived his constitutional right to challenge the seizure of the gun by abandoning it in what amounted to an "independent act involving a calculated risk." *(People v Boodle,* 47 NY2d 398, 404, *cert denied* 444 US 969.)

In *People v Boodle (supra),* the Court of Appeals reiterated the principle that evidence revealed as a direct consequence of unlawful police action is tainted and must be suppressed. However, the court distinguished cases where a defendant seeks to rid himself of evidence as a "spontaneous, provoked reaction" to police illegality and those cases where his actions dissipate that taint because they amount to "an independent

act involving a calculated risk." *(People v Boodle, supra,* at pp 403, 404.)

In performing the difficult task of drawing a distinction between spontaneous and calculated acts, we must be guided by the principle that a presumption exists against the waiver of constitutional rights. *(People v Howard, supra,* at p 593.) Courts, therefore, should conclude that an abandonment has occurred only in the clearest of cases. Indicative of a spontaneous response to unlawful police behavior are instinctual, rather than thought-out, reactions provoked by the coercive pressure of the illegal conduct. This coercion negates the ability to make a thoughtful decision involving the conscious assumption of a risk.

Thus, in *Howard (supra),* after being unlawfully approached and then pursued into a basement of a building and after reaching a locked door, defendant dropped or threw a package he was holding which contained a gun. The court concluded that defendant's act of dropping or throwing the package was not an act " 'involving a calculated risk' " but was "a spontaneous reaction to the necessity of evading his pursuers". *(People v Howard, supra,* at p 593.) Similarly, this defendant, under the pressure of an unlawful hot pursuit, ran into an alley only to find himself fenced in with a number of policemen breathing down his neck. As he reached the fence, he threw the gun over it and was then seized by Officer Rodriguez. It is only realistic to assume that defendant's actions were precipitated by an instinctive drive to escape his pursuers rather than a reflective, intellectual formulation of strategies. As in *Howard,* defendant's act was a provoked and spontaneous response to unlawful police conduct, requiring suppression of the gun.

Accordingly, the judgment of the Supreme Court, Bronx County (Harold Silverman, J., at suppression hearing, trial and sentence), rendered December 7, 1984, which convicted defendant of criminal possession of a weapon in the third degree and sentenced him as a second violent felony offender to an indeterminate term of imprisonment of from 3½ to 7 years, is unanimously reversed, on the law, the motion to suppress granted and indictment No. 1597 of 1984 is dismissed.

ASCH, FEIN, MILONAS and ELLERIN, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on December 7, 1984, unanimously reversed, on the law, the motion

to suppress granted and indictment No. 1597 of 1984 is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.