OPINION OF THE COURT
Phylis Skloot Bamberger, J.
Defendant is charged with criminal possession of weapon. In an omnibus pretrial motion, the defendant sought suppression of the gun that is the subject of the charges. A hearing was held on November 13, 1991, and Police Officer Michael Clohessy testified. On December 9, 1991, pursuant to a request by this court, counsel submitted memoranda discussing the effect *367 of California v Hodari D. (499 US —, 111 S Ct 1547 [1991]), upon the outcome of this case. The motion to suppress was granted on December 12, 1991. This opinion sets out the findings and conclusions of the court.
FINDINGS OF FACT
Except as specifically noted, this court credits Police Officer Clohessy’s testimony. According to Police Officer Clohessy, on December 1, 1990, at about 2:30 a.m., he responded to a radio run that there was a large group of people fighting at 1411 Grand Concourse and a man with a knife. The man was said to be wearing a dark jacket with a white stripe. Although Clohessy testified the description said male hispanic, that was not included in the sprint report of the radio run and the court finds that Clohessy did not know that information. There was a description of another man wearing a red jacket. The officers went to the location, were there for fewer than five seconds and saw no one. Then another call came over the radio of an officer in trouble. The officers went to the second location, spent 2 or 3 minutes there and then returned to the first location.
When Clohessy returned, there were three people at 1411 Grand Concourse. No one was wearing a red jacket and there was no one fighting. The defendant was wearing a jacket with light brown sleeves. Clohessy said he fit the description.
As the officers approached the three men, the defendant ran away. He ran north on the Grand Concourse to 171 Street and then west on 171 Street to Wythe Street and then north on Wythe to 172 Street an then west on 172 Street to Walton Avenue. Clohessy and Mullen followed the defendant in a chase lasting about 45 seconds. Mullen was about six steps behind the defendant. Clohessy saw the defendant reach for his waistband and then toss a gun under a car. While Mullen continued to run after defendant, Clohessy retrieved the gun. As defendant ran police cars came from everywhere blocking his route. He stopped and acted as if nothing was wrong and was arrested by Mullen. When Clohessy asked the defendant why he ran, he said he was on probation and was scared.
CONCLUSIONS
The questions to be resolved in this case are set out in People v Torres (115 AD2d 93, 95 [1st Dept 1986]): "Resolution of the suppression issue involves basically two inquiries: *368 whether the police action was illegal, requiring that the gun, which was seized as a direct result of that action, be suppressed as the fruit of the poisonous tree, and whether despite the illegal conduct defendant waived his constitutional right to challenge it by his act of discarding the gun in a manner indicative of an intentional abandonment.” (See also, People v Grant, 164 AD2d 170 [1st Dept 1990], appeal dismissed 77 NY2d 926 [1991] [reaffirming People v Torres, supra].)
This formulation of the relevant inquiry is derived from two Court of Appeals decisions, People v Boodle (47 NY2d 398, cert denied 444 US 969 [1979]), and People v Howard (50 NY2d 583, cert denied 449 US 1023 [1980]).
In Boodle (supra) the court held that the defendant was in custody when he entered a police car at an officer’s request, was told to keep his hands in view, and the officer proceeded to drive off in the car. The court found a seizure under the State and Federal Constitutions because the defendant’s liberty of movement had been substantially infringed by the police action. (47 NY2d, supra, at 401.) The court went on to find the seizure unlawful. The court then considered the second question: whether the defendant’s conduct of tossing a gun from the police car window was the result of the unlawful police conduct. The court held that the defendant’s action was not the result of the police conduct. As the Court of Appeals opinion states, the analysis used to decide Boodle’s motion was not new. The two-step analysis had been applied where the defendant tossed away property after the police illegally arrested the defendant (People v Baldwin, 25 NY2d 66 [1969]), and where the police unlawfully threatened to kick in the apartment door of an apartment (People v Loria, 10 NY2d 368 [1961]). In 1984, People v Wilkerson (64 NY2d 749), reaffirmed the Boodle two-step analysis.
In Howard (supra) the Court of Appeals applied the Boodle analysis to instances in which an individual refused to stop as a result of illegal police action. Instead, the individual ran from the police and during the flight tossed away contraband or evidence. The Court of Appeals found in both the Federal and State Constitutions the right to remain silent and the right "to be let alone” when police officers approached to make inquiry. The court noted that few cases explicitly held there was a right to be let alone, "probably because few individuals feel they can walk away or refuse to answer”. (50 NY2d, supra, at 590.) To support the right, the court referred to a New York trial court decision, opinions from other States, *369 commentaries by experts, and several Federal Court of Appeals decisions. The Court of Appeals also cited a footnote in Davis v Mississippi (394 US 721, 727, n 6 [1969]), and Justice Harlan’s concurring opinion in Terry v Ohio (392 US 1, 32-33 [1968]). The Court of Appeals said these precedents defined a seizure by whether a person interrogated by the police lost his right to ignore his interrogator and walk away. Based on this analysis, the Court of Appeals found a right not to answer questions and to walk away from the police, unless other information known to the police provided reasonable suspicion that a crime had taken place, would take place or was taking place.
Combining the reasoning of Boodle (supra) with that of Howard (supra) has produced the two-pronged analysis of Torres (supra) that applies in this case. Here, the police approach to the defendant was without justification. When Clohessy arrived at the location specified in the anonymous radio run no one was present and none of the information he received in the radio run was confirmed. Clohessy then left the scene to answer another call. When he returned, several people, including the defendant, were present. There was no fight, no one with a knife, and no one in a red jacket. Further, the jacket defendant was wearing was not one with a white stripe, but one with light brown sleeves. The officers had no reason to believe that any criminal activity was afoot and, at most, had only a right to inquire. (See, People v De Bour, 40 NY2d 210, 223 [1976].) There was no basis for the pursuit of the defendant as he fled from the police. (People v Rodriguez, 178 AD2d 381 [1st Dept]; People v Stewart, 174 AD2d 769 [2d Dept], lv dismissed 78 NY2d 1015 [1991]; People v Grant, 164 AD2d 170; People v Terracciano, 135 AD2d 849, 851 [2d Dept 1987], lv denied 71 NY2d 903 [1988].)
The second question to be resolved is whether the tossing away of the gun was a spontaneous act resulting from the illegal police conduct or an independent act involving a calculated risk. Officer Clohessy described the chase as lasting about 45 seconds. The chase was for four blocks, and the gun was tossed at the end of the third block, after about 30 seconds. Everyone was running very quickly. Fifteen seconds after the defendant tossed the gun, he stopped running as police cars came from everywhere and he had no place to go.
The tossing of the gun in these circumstances was a spontaneous reaction to the unlawful police conduct. Everyone was running very quickly; defendant was followed close behind by *370 two officers. At some point police cars appeared on every street, blocking his way. Clohessy’s testimony that the flight lasted 45 seconds and the gun was tossed toward the end of it necessarily coincided with the approach of the other police cars. The tossing of the gun was a spontaneous act, just as the dropping the vanity case was in Howard (supra), and could not have been an independent calculated act because the increasingly intensive police conduct precluded that. (People v Rodriguez, supra, at 381; People v Grant, 164 AD2d 170, supra.)
One further issue need be discussed, and that is whether California v Hodari D. (supra) has any impact on New York law. On April 23, 1991, the United States Supreme Court held that pursuit of a person by the police does not constitute a seizure of that person and that pursuit, even if unjustified under law, is not a violation of the Fourth Amendment. As a consequence, any property thrown away by a person can be seized as abandoned property. The words of Justice Scalia set out the rationale of the decision: "Street pursuits always place the public at some risk, and compliance with police orders to stop should therefore be encouraged. Only a few of those orders, we must presume, will be without adequate basis, and since the addressee has no ready means of identifying the deficient ones it almost invariably is the responsible course to comply. Unlawful orders will not be deterred, moreover, by sanctioning through the exclusionary rule those of them that are not obeyed. Since policemen do not command 'Stop!’ expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent to their genuine, successful seizures.” (California v Hodari D., 499 US, supra, at —, 111 S Ct, supra, at 1551.)
The contrast between the Hodari D. analysis and the New York analysis previously described makes clear that a different approach to evaluating issues of flight and abandonment is taken by New York and the United States Supreme Court. Where one of two factors in evaluating the admissibility of evidence is the legality of the police approach to the person or of an order given by the police, New York does not assume the legality of police conduct, but rather puts the burden on the People to prove it. (People v Berrios, 28 NY2d 361, 367 [1971].) New York does not apply its exclusionary rule to successful seizures only and New York fully adopts the right to be free from all involuntary intrusion unless it is justified. The New York analysis is universally accepted in its courts and, as *371 shown by Howard (supra), does not depend on the Federal Constitution. Different results in specific cases arise not from any dispute about principles but from factual determinations about whether the particular police conduct was legal.
The cases demonstrating this are numerous and the following list, as well as the cases previously cited, provide only a small sample of the most recent cases. (People v Martinez, 176 AD2d 761 [2d Dept 1991]; People v Rivera, 175 AD2d 78 [1st Dept 1991]; People v Stewart, 174 AD2d 769 [2d Dept], lv dismissed 78 NY2d 1015 [1991], supra; People v Marrero, 173 AD2d 244 [1st Dept], appeal dismissed 78 NY2d 969 [1991]; People v Elliott, 162 AD2d 609 [2d Dept], lv denied 76 NY2d 856 [1990]; People v Aybar, 162 AD2d 283 [1st Dept], lv denied 76 NY2d 937 [1990]; People v Lawrence, 145 AD2d 375 [1st Dept 1988], appeal dismissed 74 NY2d 732 [1989]; People v Peterson, 144 AD2d 1029 [4th Dept 1988]; People v Martin, 140 AD2d 632 [2d Dept], lv denied 72 NY2d 959 [1988]; People v Archie, 136 AD2d 553 [2d Dept], lv dismissed 71 NY2d 892 [1988]; People v Gordon, 122 AD2d 640 [1st Dept 1986], appeal dismissed 69 NY2d 874 [1987].)*
New York has declined to follow the United States Supreme Court when it reduced a previously afforded level of constitutional protection. (E.g., People v Johnson, 66 NY2d 398, 407 [1985]; People v Bigelow, 66 NY2d 417 [1985]; People v Class, 67 NY2d 431 [1986]; People v Griminger, 71 NY2d 635 [1988]; see also, People v Torres, 74 NY2d 224, 228 [1989].) What is relevant for the outcome in this case is not that the United States Supreme Court has retracted Federal protections but that before the Supreme Court definitively spoke in Hodari D. (supra) about the issue of flight in the face of illegal police conduct, the New York courts had, in an unwavering line of cases, adopted a principle of State constitutional protection. This principle is too significant to be superseded by a new Supreme Court decision premised on an analysis that is the antithesis of that used in New York.
Hodari D. (supra) is not binding on this court.

 Two Appellate Division cases have cited Hodari D. (supra). People v Rivera (175 AD2d 78, 80 [1st Dept 1991]), gives Hodari a "see also” signal after a cite to Boodle (supra). People v Stewart (174 AD2d 769), finding the tossing of a gun an independent act involving a calculated risk, expressly relied only on New York law, and not Hodari D.