STATE OF NEBRASKA, APPELLEE, V. DONALD L. ELLINGTON,
APPELLANT.
495 N.W.2d 915

Filed February 26, 1993.    No. S-90-888.

Thomas M. Kenney, Douglas County Public Defender, Brian S. Munnelly, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This appeal from a criminal conviction comes before this court by means of a request for further review from a decision of the Nebraska Court of Appeals. After a stipulated bench trial, the district court for Douglas County convicted appellant, Donald L. Ellington, of possession of cocaine, and the Nebraska Court of Appeals affirmed. See *State v. Ellington*, 1 NCA 668 (1992). Ellington's appeal is based on a single assignment of error: the trial court's decision to overrule Ellington's pretrial motion to suppress the fruits of a *Terry* stop and appellant's subsequent arrest.

The events leading up to appellant's arrest and conviction are for the most part undisputed. On the evening of January 14, 1990, Officer Mark Lang of the Omaha Police Division's uniform field bureau patrol was on routine cruiser patrol in a two-officer marked car with his partner, James Morgan. Lang had been an officer for approximately 4 years and had received academy teaching and hands-on training in narcotics investigations.

At approximately 9 p.m., while patrolling an area with known drug trafficking, the defendant caught Lang's attention because the defendant was standing on a sidewalk and, in Lang's words:

> He was bent over, leaning into a vehicle which was parked on the west side of 24th Street just north of Taylor Street, with his arms extended into the vehicle, and appeared to be conversing with the occupants of the vehicle.
>
> . . . .
>
> [When the defendant observed the police cruiser he] quickly stepped away from the vehicle, and then began to

walk away.

Lang and his partner, who were in uniform, exited the police cruiser, approached Ellington, and explained that it appeared Ellington might be involved in a drug transaction. Lang asked Ellington whether he had any drugs or weapons on his person, to which Ellington replied in the negative. After allegedly receiving Ellington's permission, Lang performed an exterior pat-down search. During this search, Lang felt a hard object in the right inside pocket of Ellington's jacket that Lang testified felt like a possible weapon. Lang removed the object, which proved to be a glass crack pipe.

Lang placed Ellington under arrest after the discovery of the pipe. A further search uncovered a rocklike substance later identified as crack cocaine, a woman's compact containing a razor blade with a whitish powder residue, and two pieces of bronze wire meshing with residue.

Ellington filed a pretrial motion to suppress all physical evidence discovered from the search of his person. The defendant alleged that the search was without a warrant, without authority, prior to and not incident to a lawful arrest, without probable cause, and without proper consent of the defendant, in violation of his state and federal constitutional rights.

Lang was the sole witness to testify at the suppression hearing. Lang testified that the defendant's actions caught his attention because "[b]ased on parties that we have arrested in the past, and knowledge that drug transactions usually occur primarily with parties on foot in that area, they sometimes will flag down a car, or approach a car that will stop, at which time the transaction will take place."

However, Lang testified that he did not see Ellington flag down the car or approach the car before it was stopped, did not see anything in Ellington's hands, nor did he see anything pass between Ellington and the occupants of the automobile, such as plastic bags, containers, or money. Furthermore, Lang could not hear any conversation between the automobile occupants and Ellington.

Finding that an investigative stop permitted under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968),

justified the detention of Ellington for questioning, the district court overruled the motion to suppress physical evidence. The court declined to make a voluntariness finding, acknowledging that the voluntariness of any statements made by the defendant was not fully explored within the context of the hearing.

Ellington waived his right to a jury trial, in part because of a desire to preserve the suppression issue for appeal. All evidence produced at the suppression hearing, as well as the police and chemist reports, were admitted by stipulation of the parties and were prefaced by Ellington's counsel with the following: "Again, the whole intent of this type of proceeding today is so that we do not waive our right to appeal the issues on the suppression hearing."

The matter was submitted to the court with neither the State nor the defendant presenting any other evidence. The court found the defendant guilty of possession of a controlled substance, crack cocaine, and sentenced the defendant to 15 months in jail, with credit for time served.

On appeal to the Nebraska Court of Appeals, Ellington maintained that the record was devoid of facts which would reasonably raise an inference that he was engaging in criminal conduct. The Nebraska Court of Appeals held that the lower court was not clearly in error in finding a justified investigative stop based on the totality of the circumstances and consequently found that the crack pipe was lawfully found in the course of a pat-down search allowed under *Terry v. Ohio*. *State v. Ellington, supra*. The Nebraska Court of Appeals further found that the additional evidence discovered in the full search was admissible either because the discovery of the pipe provided the officer with probable cause to believe the defendant was in possession of contraband, or because the full search was incident to a lawful arrest. *Id*.

Because the Nebraska Court of Appeals found that the initial search was lawful as an investigative stop under *Terry v. Ohio*, the court did not reach the issue of whether the defendant consented to the complete search. The Nebraska Court of Appeals also declined to address the State's contention that the defendant had not properly preserved the objection to the admission of the evidence at the bench trial. *State v. Ellington,*

*supra.*

A trial court's ruling on a motion to suppress will be upheld on appeal unless the trial court's findings of fact are clearly erroneous. *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992). In reviewing a trial court's findings on a suppression motion, an appellate court recognizes the trial court as the finder of fact and takes into consideration that the trial court has observed witnesses testifying in regard to such motion. *Id.*

The defendant argues that the record is devoid of any fact, observed or discovered by Lang, which would create a reasonable suspicion of criminal activity to justify an investigatory detention under *Terry v. Ohio*. In *Terry v. Ohio*, the U.S. Supreme Court held that the public's interest in effective law enforcement makes it reasonable to detain and question individuals under certain circumstances in which probable cause to arrest is lacking. However, in order to protect an individual's right to personal security free from arbitrary interference by law officers, limited investigatory stops are permissible only upon a reasonable suspicion supported by specific and articulable facts that the person is, was, or is about to be engaged in criminal activity. In determining whether the officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience. *Terry v. Ohio, supra.*

We apply this same standard when determining the propriety of an investigatory stop under Neb. Const. art. I, § 7, which forbids the unreasonable seizure of persons by state authorities. *State v. Hicks, supra.*

While a police officer may question a person without bringing about a seizure when the interrogation is carried on without interrupting or restraining the questioned person's movement, see *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991), neither the State nor the trial court questioned the defendant's assertion that he was seized or detained at the time the two officers stopped him as he walked away. Therefore, it is undisputed on appeal that the initial encounter between the defendant and the officers was a seizure within the meaning of

the Fourth Amendment to the U.S. Constitution and art. I, § 7, of the Nebraska Constitution.

Having determined that a *Terry* stop occurred, we must next resolve whether the police officers had a reasonable suspicion of criminal activity to justify the investigatory stop. Whether a police officer has a reasonable suspicion based on sufficient articulable facts requires taking into account the totality of the circumstances. *State v. Pillard*, 235 Neb. 642, 456 N.W.2d 755 (1990). We recently held that an individual's flight upon the approach of a police vehicle patrolling a high-crime area, in the absence of specific knowledge connecting the individual to involvement in criminal conduct, is insufficient in itself to justify an investigatory stop. *State v. Hicks, supra.* Therefore, the focus is whether the officer's observation of Ellington leaning into a vehicle with his arms extended into the passenger window while conversing with the occupants amounted to specific knowledge connecting Ellington to criminal activity.

Similar factual circumstances proffered to justify a reasonable articulable suspicion of drug-related activity have been addressed and rejected by other jurisdictions. See, *Gaskin v. State*, 565 So. 2d 675 (Ala. Crim. App. 1990); *People v. McGriff*, 217 Cal. App. 3d 1140, 266 Cal. Rptr. 429 (1990) (citing *People v. Aldridge*, 35 Cal. 3d 473, 674 P.2d 240, 198 Cal. Rptr. 538 (1984)); *Dames v. State*, 566 So. 2d 51 (Fla. App. 1990); *State v. White*, 197 Ga. App. 426, 398 S.E.2d 778 (1990); *State v. Cuevas*, 526 So. 2d 1346 (La. App. 1988); *McKinney v. State*, 761 S.W.2d 549 (Tex. App. 1988). These jurisdictions have collectively concluded that when an officer does not recognize or know an individual; is not acting on particularized information from a third party; does not observe an exchange of items or money between the individual and another person; does not observe any movement, gestures, or attempts by the individual to conceal or hide objects; does not observe the individual repeatedly approach vehicles in a similar pattern of activity; and does not suspect the individual of any other crime, the officer's mere observation of a pedestrian leaning into a window of a stopped vehicle in a high-crime area and then walking away upon seeing the officer does not amount to a reasonable suspicion of drug-related activity warranting an

investigatory stop.

This court has consistently held that the record must demonstrate facts that are sufficiently particularized and objective to justify a state official's reasonable suspicion of criminal activity. See, generally, *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992) (finding that the police had formed a reasonable suspicion based on informant's tip corroborated by surveillance of area in question); *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991) (concluding that a police officer who verified information from a confidential informant had a reasonable suspicion); *State v. Mahlin*, 236 Neb. 818, 464 N.W.2d 312 (1991) (holding that police observations of a passenger rolling a small white object, lighting it, smoking it, and passing it to the driver provided a reasonable suspicion of drug activity); *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991) (recognizing that a reasonable suspicion may be based on appearances and activities that fit the so-called drug courier profile); *State v. Bridge*, 234 Neb. 781, 452 N.W.2d 542 (1990) (finding that a police officer had a reasonable suspicion based on information received from another officer who had smelled alcohol on defendant's breath and then saw defendant drive a car); *State v. Hill*, 233 Neb. 305, 444 N.W.2d 905 (1989) (finding that a police officer, who knew defendant, had a reasonable suspicion based on a 6-week surveillance of the area, the officer's personal knowledge, and an observed exchange of cash and an unknown object); *State v. Booth*, 202 Neb. 692, 276 N.W.2d 673 (1979), *cert. denied* 444 U.S. 982, 100 S. Ct. 485, 62 L. Ed. 2d 409 (finding that a police officer who was responding to information from an identified witness about a defendant known to be a drug user was acting upon a reasonable suspicion of criminal activity).

In examining the record for the activity which the police officer observed, we find that the officer failed to articulate specific facts to justify a *Terry* stop. Lang merely observed a male standing on a sidewalk in an area with known drug trafficking. The male was leaning toward a legally parked vehicle with his arms extended into the passenger window, appearing to converse with the occupants of the vehicle. This individual then looked toward the officer's marked cruiser,

quickly stepped away, and proceeded to walk away from the vehicle.

There is no evidence in the record that Lang knew either Ellington or the occupants of the vehicle to whom the defendant was talking. There is no indication that Lang was acting upon a recent tip or had observed other similar encounters between Ellington and other passing motorists. Lang specifically denied seeing anything in Ellington's hands, observing an exchange of money or other objects between Ellington and the occupants of the vehicle, or seeing Ellington put anything in his pocket when he straightened up and proceeded to walk away. The vehicle was parked in an outside lane primarily used for parking, and there is nothing in the record to indicate that the encounter was causing a traffic hazard or other similar violation.

Mere suspicious activity is not a sufficient basis for police interference with an individual's freedom, nor may police officers actively create " 'street encounters' " unless the officers have knowledge of suspicious facts and circumstances sufficient to allow them to infringe upon an individual's right to be free from governmental interference. *State v. Cuevas*, 526 So. 2d 1346, 1350 (La. App. 1988) (citing *State v. Hathaway*, 411 So. 2d 1074 (La. 1982)).

The State urges that even if the stop was illegal, the subsequent search was lawful because the defendant gave his consent. The trial court specifically declined to make a finding that the defendant voluntarily consented to a search due to the limited basis of the suppression hearing and the court's ultimate holding founded on a permissible *Terry* stop. We therefore decline to make such a factual finding, which is properly left to the province of the trial court.

The State further argues that the defendant did not timely and properly object to the admission of evidence at the bench trial. A review of the trial records establishes that at all material times, the State was aware that the defense counsel stipulated to the admission of all evidence at the bench trial on condition that the defendant's objections at the motion to suppress be preserved. We find that the defendant, by conditionally stipulating to the admission of evidence, preserved for this

court's review all alleged errors in the motion to suppress.

In sum, based on the totality of the circumstances, we find that the police officers failed to articulate specific and objective facts that would justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Because the glass crack pipe, crack cocaine, and other drug paraphernalia were obtained as a direct result of the illegal stop, it was error for the district court to deny the defendant's motion to suppress. Accordingly, the judgment is reversed and the cause remanded to the Nebraska Court of Appeals with directions to reverse the judgment of the district court and to grant a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.