STATE OF NEBRASKA, APPELLEE, V. JOHN E. CRONIN, APPELLANT.

509 N.W.2d 673

Filed December 14, 1993. No. A-93-155.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Kimberly A. Klein for appellee.

CONNOLLY, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

## INTRODUCTION

Appellant, John E. Cronin, was convicted of possession of a controlled substance in the district court for Douglas County. Cronin has appealed to this court, claiming the district court erred in overruling his motion to suppress physical evidence.

## FACTUAL BACKGROUND

The record discloses that on June 19, 1992, Officers Randy Anderson and Joseph Baudler of the Omaha Police Division were working a foot patrol, in uniform, at the south side housing projects near 30th and T Streets in Omaha, Nebraska. At approximately 1 a.m., the officers observed appellant inside a parked, olive green Datsun station wagon. As the officers approached the vehicle, appellant drove away in the opposite direction. The officers ordered appellant to stop, and when he did not comply, the officers returned to their cruiser and broadcast a description of appellant's car over the police radio "with the intent for possibly another cruiser to stop the vehicle." The officers then drove around the area searching for appellant and, less than 5 minutes later, discovered appellant's

vehicle in a parking lot at Stratford Square Apartments near 27th and Harrison Streets. As the officers approached appellant's vehicle, appellant stood up between two other parked vehicles and began walking away from the officers. Officer Anderson then leaped from the cruiser. When appellant continued to walk in the opposite direction, Officer Anderson ran after appellant. As Officer Anderson was fast approaching appellant, the officer observed appellant drop a small plastic bag containing a white substance. Officer Anderson then forced appellant to the ground and placed him under arrest. The substance in the plastic bag later tested positive for cocaine. Swabs of appellant's hands also tested positive for the presence of cocaine. Appellant was then charged with possession of a controlled substance, a Class IV felony.

Appellant filed a motion to suppress physical evidence, alleging that the evidence, i.e., the cocaine, "was obtained in violation of the rights of the Defendant as guaranteed by the Constitutions of the United States and the State of Nebraska." The district court overruled appellant's motion to suppress and convicted appellant after a bench trial.

## ASSIGNMENT OF ERROR

Appellant alleges that the district court erred in overruling his motion to suppress physical evidence, because the evidence was "the fruit of an illegal detention." Brief for appellant at 4.

## STANDARD OF REVIEW

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992), *cert. denied* ____ U.S. ____, 113 S. Ct. 1625, 123 L. Ed. 2d 183 (1993); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *Thompson, supra*; *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992).

## ANALYSIS

To support his claim that the physical evidence in this case was obtained during an illegal detention, appellant cites *State v. Hicks, supra*, and *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993). In *Hicks*, police officers stopped and questioned the defendant after he had run upon being warned of the officers' presence. The officers asked the defendant why he had run, to which he responded that he had an outstanding warrant. The officers then placed the defendant under arrest. Upon searching the defendant and looking in the passenger-side window of his car, the officers found a gun. The defendant was charged with being a felon in possession of a firearm. The defendant filed a motion to suppress the statements he had made to the officers, alleging the statements were the fruit of an illegal seizure. The trial court denied the motion, but the Nebraska Supreme Court reversed. The Supreme Court held that a suspect's flight from a police officer, without more, does not give the officer a reasonable suspicion of criminal activity that would justify an investigative stop. The court stated that flight from a police officer can justify an investigatory stop only when the officer has specific knowledge connecting the person to criminal activity.

In *Ellington*, police officers observed the defendant leaning into a stopped vehicle. As the officers approached the defendant, the defendant walked away. The officers thereafter stopped, questioned, and searched the defendant. The search produced drugs and drug paraphernalia. Ellington filed a motion to suppress physical evidence, which was denied by the trial court. The Nebraska Supreme Court reversed, holding that the police did not have reasonable suspicion to seize the defendant. Once again, the court held that police must have knowledge of specific facts connecting a suspect to criminal conduct before the suspect may lawfully be detained.

In both *Hicks* and *Ellington*, the State conceded that the defendant had been seized for Fourth Amendment purposes when the physical evidence at issue was recovered. The central issue in each of those cases was whether the police had reasonable suspicion to seize the defendant. However, in this case, the principal issue is whether appellant had been seized at

all when he discarded the bag containing cocaine. Appellant thus cannot rely on *Hicks* or *Ellington* to support his claim that he was detained (seized) unlawfully when he dropped the bag containing cocaine.

A finding that appellant was not seized when he dropped the cocaine would then render the cocaine abandoned property that was lawfully recovered by the police. See, *State v. Shahid*, 813 S.W.2d 38 (Mo. App. 1991); *Fernandez v. State*, 306 S.C. 264, 411 S.E.2d 426 (1991); *State v. Perez*, 592 So. 2d 1099 (Fla. App. 1990); *People v Mamon*, 435 Mich. 1, 457 N.W.2d 623 (1990); Annot., 40 A.L.R.4th 381 (1985).

The U.S. Supreme Court has addressed the issue of whether a Fourth Amendment seizure had occurred on facts exceptionally similar to those in the case before us. In *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), two Oakland, California, police officers were patrolling a high crime area when they saw several youths huddled around a parked car. When the youths saw the officers' car, they panicked and took flight. The officers then chased one of the suspects. As the officers neared the suspect, he tossed away what appeared to be a small rock. A moment later, one of the officers tackled the suspect and handcuffed him. The rock that the suspect discarded was found to be crack cocaine.

The suspect filed a motion to suppress the cocaine, contending that it was the fruit of an illegal seizure. The only issue presented to the U.S. Supreme Court in *Hodari D.* was whether the suspect had been seized within the meaning of the Fourth Amendment at the time he tossed away the cocaine.

The Court in *Hodari D.* held that a seizure for Fourth Amendment purposes requires either a police officer's application of physical force to a suspect or a suspect's submission to an officer's assertion of authority. The Court went on to hold that the police in *Hodari D.* asserted authority by chasing the suspect. However, the Court found that the suspect did not submit to the officer's show of authority, and thus, the suspect was not seized for Fourth Amendment purposes until the officer tackled him. The Court reasoned that because the suspect in *Hodari D.* was not seized at the time he dropped the cocaine, the cocaine was abandoned property that

was lawfully recovered by the police and admissible as evidence against the suspect. See, Annot., 40 A.L.R.4th 381 (1985).

The Nebraska Supreme Court has cited *Hodari D.* with approval in two cases involving search and seizure issues. See, *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* ____ U.S.____, 114 S. Ct. 113, 126 L. Ed. 2d 78; *State v. Twohig*, 238 Neb. 92, 469 N.W.2d 344 (1991). However, in both *Van Ackeren* and *Twohig* the court addressed the seizure issue in the context of appeals based on the Fourth Amendment to the U.S. Constitution, and the court did not apply the *Hodari D.* decision to article I, § 7, of the Nebraska Constitution. As discussed above, appellant challenges the police conduct on both federal and state constitutional grounds.

■ We note that the prohibition against unreasonable searches and seizures in the federal Constitution is textually identical to that found in article I, § 7, of the Nebraska Constitution. However, it is well established that a state may interpret its own constitution to offer greater protection of individual rights than does the federal Constitution. See, *State v. Havlat*, 222 Neb. 554, 385 N.W.2d 436 (1986); *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980). Thus, we address the question of whether the interpretation of the term "seizure" in *Hodari D.* is applicable to the Nebraska Constitution.

Several other states that have addressed this question have declined to follow the *Hodari D.* approach. See, *Matter of Welfare of E.D.J.*, 502 N.W.2d 779 (Minn. 1993); *State v. Quino*, 74 Haw. 161, 840 P.2d 358 (1992), *reconsideration denied* 74 Haw. 650, 843 P.2d 144, *cert. denied* ____ U.S. ____, 113 S. Ct. 1849, 123 L. Ed. 2d 472 (1993); *State v. Oquendo*, 223 Conn. 635, 613 A.2d 1300 (1992); *People v. Madera*, 153 Misc. 2d 366, 580 N.Y.S.2d 984 (1992), *aff'd* No. 283 SSM 38, 1993 WL 403902 (N.Y. Oct. 12, 1993). See, also, *State v. Tucker*, 619 So. 2d 38 (La. 1993), *reinstated and reaffirmed* Nos. 92-KO-2093, 92-K-2130, 1993 WL 427306 (La. Oct. 18, 1993) (adopting *Hodari D.*'s definition of an actual stop, but holding that under the Louisiana Constitution a seizure also occurs when there is an "imminent actual stop").

These states have cited various reasons for declining to follow the *Hodari D.* approach, including the existence of an explicit state constitutional right of privacy that afforded greater constitutional protection from unreasonable seizures, see *Quino, supra*, the fact that the state courts had considerable experience in applying the pre-*Hodari D.* standard, see *Matter of Welfare of E.D.J., supra*, and *Madera, supra*, and the existence of authoritative state precedent that did not parallel the restricted definition of a seizure employed in *Hodari D.*, see *Oquendo, supra*. In addition, several of the states that declined to follow *Hodari D.* had historically afforded their citizens greater rights under their respective state constitutions than is afforded by the federal Constitution. See, *Quino, supra*; *Madera, supra*.

Unlike most states that have declined to follow the *Hodari D.* approach, Nebraska has neither an explicit constitutional right of privacy nor a history of affording individuals greater rights than are afforded by the federal Constitution. See, *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991) (White, J., dissenting); *Havlat, supra*; *State v. Arnold*, 214 Neb. 769, 336 N.W.2d 97 (1983) (White, J., concurring). When these distinctions are added to the Nebraska Supreme Court's apparent approval of *Hodari D.* in *Van Ackeren* and *Twohig*, where the appeals were based on the federal Constitution, we are compelled to hold that the standard announced in *Hodari D.* applies to the present case, where the appeal is based on the state Constitution as well as the federal Constitution. A seizure for purposes of article I, § 7, of the Nebraska Constitution thus requires either a police officer's application of physical force to a suspect or a suspect's submission to an officer's show of authority.

Applying the *Hodari D.* standard to the present case, we find that although Officers Anderson and Baudler made a show of authority by ordering appellant to stop and subsequently pursuing him, appellant did not submit to that show of authority and, hence, was not seized until Officer Anderson applied physical force to appellant. Thus, appellant was not seized or detained by the officers when he dropped the drugs. Because appellant was not seized when the drugs were

recovered, *Hicks* and *Ellington* are inapplicable to this case.

We find that the drugs were abandoned by appellant, were lawfully recovered by the police, and were not the fruit of an unlawful seizure.

## CONCLUSION

Having found that the evidence in this case was not obtained as the result of an unlawful seizure of appellant, we affirm the district court's overruling of appellant's motion to suppress physical evidence.

AFFIRMED.