■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EMORY L. DAVIS, Appellant. [629 NYS2d 542] —Cardona, P. J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered October 25, 1993, convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the second degree and criminal possession of a controlled substance in the third degree.

At approximately 9:30 P.M. on November 21, 1992, Police Officer Michael Buemi was on patrol in a marked police unit at the local Greyhound bus station in a downtown area of the City of Binghamton, Broome County, known for high drug activity. Buemi observed defendant disembark from a New York City bus carrying a small, white, plastic shopping bag. Buemi saw defendant walk into the parking lot and behind the New York City bus where he stopped and conversed with the driver and a passenger of a Bronco-type vehicle. Two weeks earlier, Buemi had ticketed the driver of this same vehicle for driving without a license and arrested a passenger on an outstanding warrant. After looking in Buemi's direction, defendant started walking away from the vehicle. The driver and passenger got back in their vehicle and drove away in the opposite direction.

While he watched the Bronco pull away, Buemi radioed Officer Gerald Grace, another uniformed officer on downtown patrol, and asked him if he could see where defendant was going. Grace reported that defendant had joined a group of individuals standing and conversing on a corner across from the bus station. From his parked patrol car, Buemi observed the corner where the group was standing and recognized one of the individuals from a prior investigation. After they appeared to look in his direction, the group began to walk in an easterly direction down Henry Street, a multilaned roadway separated by a center median. Buemi saw defendant hand the

plastic shopping bag to an individual later identified as Laquanne Hancock when he bent down to tie his shoe. The group then resumed walking with Hancock carrying the bag.

Buemi followed in his car in the same direction but on the opposite side of the road. Buemi pulled his car parallel to the group at a distance of 35 to 40 feet and slowed down. Hancock looked in Buemi's direction and put the bag down by a light-pole next to the curb. The group continued walking away from the bag. Buemi proceeded to the next intersection, made a U-turn and brought his car to a stop in front of the group. From his car, he called to the group to stop and there was no response. At that point, Grace arrived on the scene. The officers exited their cars and again ordered the individuals to stop and they complied. Buemi told Grace to watch the people while he went back to retrieve the bag, a distance of nearly half a block.

As he walked toward the bag, Buemi asked whose bag it was. There was no response. As he returned with the bag he put his hand inside to check for weapons and contraband and again asked the question. Several people, including defendant, stated it was not theirs. Buemi could see that the bag, which was not secured at the top, contained a green coat. With his hand inside the pocket of the green coat Buemi could feel two brown paper bags. One felt bulky but the other contained what he believed to be glassine packets. As he started to remove the coat from the bag, Buemi stated that he was going to search it. Defendant then stated that the coat belonged to his girlfriend and he did not want Buemi looking in it. Buemi stated that he believed he knew what was in there and proceeded to search it. The search revealed a large quantity of what later proved to be cocaine, some of it packaged in 121 glassine bags. From the other pocket of the coat, Buemi also recovered three different forms of identification each bearing defendant's name.

Defendant was indicted for criminal possession of a controlled substance in the second degree and criminal possession of a controlled substance in the third degree. After a hearing, County Court upheld the search of the bag finding that it had been abandoned. Following denial of his suppression motion, defendant pleaded guilty to both charges in exchange for negotiated concurrent prison sentences of 3 years to life on the first charge and 3 to 9 years on the second charge. Defendant appeals.

We affirm. Initially, we reject defendant's attempt to place police surveillance on the same level as a request for information or a common-law inquiry by application of the four-part

analysis set out in *People v De Bour* (40 NY2d 210) for evaluating encounters initiated by police in their criminal law enforcement capacity. Unlike an actual police-initiated approach, surveillance does not involve interference with liberty. Although a person in defendant's circumstances might find the type of police scrutiny employed in this case unsettling, there is no basis for suppression, even if the evidence was discovered as a direct consequence of the surveillance (*see, People v Wilkerson*, 64 NY2d 749), because it did not involve police intrusion. In any event, the record supports a finding that the acts of putting down the bag and walking away from it were independent acts involving a calculated risk to discard it and not, given the open nature of the police surveillance, spontaneous reactions to a sudden and unexpected police confrontation (*see generally, People v Wilkerson, supra*, at 750; *People v Boodle*, 47 NY2d 398, 404, *cert denied* 444 US 969; *People v Martinez*, 206 AD2d 693, 695, *lv denied* 84 NY2d 937). Therefore, we agree with County Court that a valid abandonment occurred (*see, People v Boodle, supra*, at 404).

We find it unnecessary to address defendant's remaining contentions.

Mercure, White, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.