■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BARRY ELLIOT, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Grajales, J.), rendered February 14, 1989, convicting him of attempted criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

The evidence adduced at the suppression hearing established that two uniformed police officers were canvassing the Brevoort housing project for a robbery suspect. The defendant was walking towards the patrol car and parallel to a chain link fence, adjacent to the project's playground. When the defendant noticed the patrol car, he changed his direction, quickened his pace, and continued to look back at the patrol car while proceeding to walk through an opening in the fence. Although the defendant did not match the description of the robbery suspect, his furtive actions led the officers to believe that he might have information concerning the robbery. Officer McConnell, who was driving the patrol car, asked the defendant to come over to the car to answer a question. The defendant responded that he had done nothing wrong and requested to be left alone. As Officer Stevenson began to exit the patrol car, the defendant, who was 60 to 70 feet away, started to run. Officer Stevenson ran after the defendant, "to cut him off", while Officer McConnell followed the defendant in the patrol car. Without looking back at Stevenson, the

defendant ran about 200 feet to a shed located in the middle of the playground. Upon reaching the shed, the defendant ran around the structure to an open door. He then peered over the wall to ascertain the location of the patrol car, which had been following the defendant on the roadway opposite to the side of the shed where the defendant had stopped. Next, the defendant crouched down and removed a silver object from his pocket and placed it on the doorjamb. By this time, Officer Stevenson had closed the distance between him and the defendant to about 30 feet. After observing the defendant deposit the silver object on the doorjamb, Officer Stevenson shouted, "police, don't move". The defendant jumped back, startled, and after he began to run again Officer Stevenson went over to the silver object and discovered that it was a .32 caliber automatic pistol.

The pursuit of a person who flees after first being approached by the police for purposes of an investigatory inquiry, as here, is justified only when reasonable suspicion exists that the person has committed or was about to commit a crime (People v Howard, 50 NY2d 583, 592, cert denied 449 US 1023; see also, People v Leung, 68 NY2d 734, 736; People v Terracciano, 135 AD2d 849). The police had not observed any criminal activity on the part of the defendant, who concededly did not match the description of the robbery suspect. Consequently, the officers' pursuit of the defendant, premised merely on furtive behavior and flight, was unlawful (see, People v Martin, 140 AD2d 632; see also, People v Howard, supra; cf., People v Leung, supra). Nevertheless, we agree with the hearing court that the gun was admissible at trial.

If evidence is discovered as a direct consequence of the unlawful police conduct, then it must be suppressed. The test to be applied is whether the defendant's action in discarding the gun "was spontaneous and precipitated by the illegality or whether it was a calculated act not provoked by the unlawful police activity and thus attenuated from it" (People v Wilkerson, 64 NY2d 749, 750; see, People v Boodle, 47 NY2d 398, cert denied 444 US 969). Here, the circumspect manner in which the defendant divested himself of possession of the weapon is neither indicative of an instinctive drive to evade his pursuers (cf., People v Howard, supra; People v Torres, 115 AD2d 93; People v McFadden, 136 AD2d 934; People v Terracciano, supra) nor a spontaneous response to a sudden and unexpected confrontation with the police (see, People v Wilkerson, supra). Rather, the defendant's actions, coupled with the short lead he had on the pursuing officers, evidenced that the defendant

had enough time to reflect and formulate a strategy for ridding himself of the incriminating evidence *(see, People v Boodle, supra; People v Perez,* 123 AD2d 791). The proof adduced at the suppression hearing makes clear that the defendant's discarding of the gun was not a spontaneous reaction to the unlawful police chase, but was an independent act involving a calculated risk *(People v Boodle, supra; see also, People v Martin, supra).* Accordingly, suppression of the gun was properly denied. Bracken, J. P., Kooper, Rubin and Miller, JJ., concur.