(April 14, 1992)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DENNIS EASTON, Respondent.—Order, Supreme Court, New York County (Felice K. Shea, J.), entered July 18, 1991, which granted defendant's motion to suppress cocaine found in a bag dropped by defendant as he fled from the police as well as an exculpatory statement made by him after his apprehension, unanimously reversed, on the law, the motion is denied and the matter is remanded to Trial Term for further proceedings.

It is undisputed that shortly after noon on December 20, 1990, Police Officer Peter Webber, who was attached to the Street Narcotics Enforcement Unit and had made 75 to 100 prior narcotics arrests, was sitting in uniform with two other officers in an unmarked car at the northwest corner of Broadway and 153rd Street, an area described as drug prone. He noticed defendant standing on the southeast corner, showing another man a clear plastic bag containing a white powdery substance. Defendant had partially lifted the plastic bag out of a brown paper bag he was holding and then replaced it after his companion had looked at it. As the two men crossed Broadway in Officer Webber's direction, defendant again pulled the plastic bag partially out of the paper bag, thus providing the officer with another view of its contents. At this

point, defendant made eye contact with the officers in the car, appeared slightly startled and made a sudden halting motion before continuing walking towards them. Defendant then said something to his companion, whereupon the two split up with defendant walking west on 153rd Street towards Riverside Drive. Officer Webber, who was driving, decided to follow defendant, believing he had seen "illegal activity", and turned the car onto 153rd Street. As Webber drove up the street, defendant suddenly stopped midblock. The officer drove the car beyond him and stopped. The other officers, Sergeant Hurley and Officer Diaz, then got out of the car and began to walk towards defendant, who immediately turned and ran back towards Broadway. The two officers then ran after defendant, who was apprehended on 155th Street between Broadway and Riverside Drive by Officer Diaz, who had chased him on foot, and Officer Webber, who had circled around the block in the car. Officer Diaz retrieved a brown paper bag and a clear plastic bag from somewhere in the vicinity of Broadway and 155th Street, where defendant had thrown them as he was being chased. The plastic bag contained several smaller clear plastic bags containing white powder. Officer Webber recognized the brown paper bag and one of the smaller plastic bags as the ones he had seen in defendant's possession. As Officer Webber examined the smaller bags after defendant had been put in the back of the police car, defendant volunteered: "That is not mine, I didn't have nothing."

The hearing court credited Officer Webber's testimony and found that, when he saw defendant partially remove the plastic bag containing a white substance from the brown paper bag, he had reason to be suspicious that a crime might be occurring. However, because the officer did not see any exchange of money and the plastic bag described was not a glassine envelope typical of drug transactions, the court concluded that the officer did not have probable cause to believe that it contained cocaine. The court further found that defendant did not flee until such time as he was chased and that, although the police certainly had a right to investigate, they had no right to chase or stop defendant. In addition, the court found that, although the defendant's statement was volunteered, it was tainted by the unlawful arrest.

Two of the court's findings are erroneous. First, it incorrectly concluded that defendant fled only after the police began to chase him. Second, it erroneously found that there was an insufficient basis for their pursuit. In fact, defendant's flight, coupled with Officer Webber's prior observations, pro-

vided an adequate basis for the police to pursue him and the drugs discarded were lawfully obtained.

Just as in *People v Leung* (68 NY2d 734), where the defendant passed a three by five-inch manila envelope commonly used in drug transactions to another individual in a known drug area, Officer Webber's observations, given his experience and numerous drug-related arrests, provided him with an "objective credible reason" or "founded suspicion of criminal activity", which justified approaching defendant to make some inquiry, short of an actual seizure *(People v Rivera,* 175 AD2d 78, 80, 79, *lv denied* 78 NY2d 1129; *see also, People v Hollman,* 79 NY2d 181).

Regarding the court's distinction between the clear plastic bag observed by Officer Webber and a glassine envelope, "the telltale sign of heroin", we have recently rejected the contention that a clear plastic sandwich bag was not the type normally utilized in the drug trade *(People v Jones,* 172 AD2d 265, 267, *lv denied* 78 NY2d 923), and the Second Department has also accepted clear plastic bags or zip lock bags as indicia of drug transactions *(People v Ricciardi,* 149 AD2d 742; *People v Baldanza,* 138 AD2d 722, 724, *lv denied* 72 NY2d 856).

Finally, defendant's flight when the two officers exited the car and approached him but before they were able to make any inquiry constituted an "escalating factor", which, coupled with the prior observations, established reasonable suspicion that defendant was engaged in criminal activity *(People v Allen,* 141 AD2d 405, 406, *affd* 73 NY2d 378) and justified the officers' increased level of intrusion, thus permitting their pursuit of defendant *(People v Hill,* 127 AD2d 144, 147-149, *appeal dismissed* 70 NY2d 795).

Accordingly, since the pursuit here was justified by the officers' observations of defendant's conduct, the recovery of the bag of narcotics was proper and the statement subsequently volunteered was admissible. Concur—Murphy, P. J., Carro, Rosenberger, Kupferman and Ross, JJ.